IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

IN RE:

ADVANCED CARDIOLOGY CENTER CORP

XXX-XX2952

Debtor(s)

CASE NO. 07-00061 BKT

Chapter 11

FILED & ENTERED ON 06/06/2008

## OPINION & ORDER

**I.      Introduction**

In this opinion, the court must determine if the captioned Chapter 11 case should be dismissed pursuant to section 1112(b) of the Bankruptcy Code. That section establishes that a case shall be dismissed or converted if the movant establishes cause, which includes "substantial or continuing loss or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;…"  11 U.S.C.A 1112(b)(4)(A).

In compliance with section 1112(b)(3), this decision is issued within fifteen (15) days of the evidentiary hearing which commenced on May 22, 2008. The Court hereby considers only the matters of record as of the date of said hearing. For the reasons stated herein, the Court finds that creditors Centro Imagenes de Mayaguez and Mayaguez Advance Radiotherapy Center, (hereinafter "the Movants") established "cause" pursuant to section 1112(b) and that Advanced Cardiology Center, Corp. (hereinafter "Debtor") failed to establish sufficient "unusual circumstances" as to why the case should not be dismissed. For the reasons stated below, the Court finds it would be in the best

interests of the creditors and the estate to dismiss the instant Chapter 11 case.

**II. Background**

On April 2, 2004, the Debtor filed its first Chapter 11 case assigned number 04-03656 (SEK). During said proceedings, the Debtor sustained losses, was unable to reorganize, and was unable to bring to a favorable ending its litigation with the Municipality of Mayaguez regarding its right to maintain its operations of the Mayaguez Municipal Hospital. The Debtor is a corporation dedicated to the servicing and operation of the said hospital facility in Mayaguez, Puerto Rico. The case was dismissed on June 3, 2005, and closed on December 28, 2006. Then, on January 8, 2007, the Debtor filed this second Chapter 11 proceeding.

On December 12, 2007, the Movants filed a Second Motion to Dismiss pursuant to 11 U.S.C. §1112(b)(4) (Dkt. No. 247) (hereinafter "the Motion"), which incorporated a previous motion filed on November 16, 2007 (Dkt. No. 244).

Movants' Motion alleges continuing losses or the diminishing of Debtor's estate, as well as, an unlikelihood of reorganization. In said motion, Movants assert that Debtor's business has been running with enormous losses since 2004, and that even after the filing of the second bankruptcy petition, the business has continued operations with losses. Hence, the likelihood of reorganization is not possible as evidenced in Debtor's own monthly operating reports. Finally, the controversy with the Municipality of Mayaguez regarding the rescission of the executory contract with the Debtor, makes very uncertain the ability of reorganization because said contract is the Debtor's primary asset.

Regarding this executory contract, Movants' assert that the Mayaguez Superior Court had entered a judgment concerning a declaratory action filed by Debtor. In said action, the Municipality of Mayaguez maintained that the executory contract with Debtor was terminated since the year 2003. Debtor requested in the Mayaguez Superior Court a decree that the contract between the

Municipality and the Debtor was still in full force and effect. This was Debtor's second attempt to litigate the matter as explained by the State Court. On May 17, 2007, the State Court issued an order dismissing the case with prejudice stating that the Debtor has incurred in an abusive use of judicial procedures, to conveniently postpone a final resolution of its own claims regarding the existence of the contract with the Municipality and thus conveniently prolonging indefinitely its use of the Mayaguez Medical Center. The State Court finally concluded that the voluntary dismissal was with prejudice and with the effect of adjudication on the merits, and res judicata of the claims therein dismissed.

On January 14, 2007, the Debtor replied to Movants' Motion (Dkt. No. 262), alleging that there are no current losses and that Debtor's business has been generating net profits since the filing of the petition. Also, Debtor asserts that the decision of the State Court is not res judicata. The issue of res judicata, raised by the Municipality of Mayaguez, has been stayed until the final resolution of the appeal process. After a preliminary hearing, a discovery period and the filing of Movants' expert witness report (Dkt. No. 345), the evidentiary hearing was held on May 22, 2008.

At this evidentiary hearing, the court heard testimony from Movants' expert witness, CPA Rafael Martinez Margarida; Debtor's comptroller, Ms. Betzaida Cruz, and Debtor's Hospital Administrator, Mr. Julio Andino. In addition, the following documents were admitted into evidence; Movants' expert report (Exhibit 1); Debtor's interim financial statements from 2006 through 2008 (Exhibit 2); and Debtor's audited financial statement for the years 2005 and 2006 (Exhibit 3).

### III.    Applicable law and standard of review

Section 1112(b)(1) of the bankruptcy code states that "…on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court <u>shall</u> convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." (Emphasis added).

Under said section, dismissal is mandatory upon a showing of cause. Section 1112 does not define the term "cause." Rather, the section simply enumerates examples of cause, any one of which may be sufficient to justify the conversion or dismissal of the case. Collier on Bankruptcy-15th Edition Rev. P 1112.04.

In their Motion, Movants rely on section 1112(b)(4)(A) alleging that Debtor has "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;…" The purpose of this legal ground is "to prevent the debtor-in-possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." Norton Bankr. L. & Prac. 3d § 103:7, (2008).

Another learned commentator has noted, regarding substantial loss and likelihood of reorganization, that:

> "In general, this standard has two basic requirements. First, it tests whether, after the commencement of the case, the debtor has suffered or continued to experience a negative cash flow, or, alternatively, declining asset values. Second, it tests whether there is any reasonable likelihood that the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's business enterprise back on a solid financial footing within a reasonable amount of time.
> * * *
> In order to determine whether the debtor's business prospects are sufficient to justify a finding of a reasonable likelihood of rehabilitation, the court should determine not only whether the causes of the debtor's continuing losses can be corrected, but also

whether the debtor or some other party in interest is capable of performing the necessary remediation. In almost every case, the debtor's prospects will depend on whether the debtor has formulated, or can formulate within a reasonable amount of time, a reasonably detailed business plan". 7-1112 Collier on Bankruptcy-15th Edition Rev. P 1112.04

Procedurally, pursuant to section 1112(b)(1), the initial burden lies with the Movants to establish "cause" for conversion. As noted above, a list of what constitutes "cause" is found in section 1112(b)(4). Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should "consider other factors as they arise." *In re Brown,* 951 F.2d 564, 572 (3d Cir. 1991).

If the Movants establish "cause", then the burden shifts to the Debtor to prove it falls within the "unusual circumstances" exception [1112(b)(2)] to section 1112(b)(1)'s mandatory conversion. In order for the Court to deny conversion under section 1112(b)(1), the Court must be able to "specifically identify" factors to establish that conversion is not in the best interest of the creditors and the estate. *In re Gateway Access Solution*, 374 B.R. 556, (Bkrtcy.M.D.Pa. 2007). (Citing H.R. Rep. No. 109-31(1) at 94 (2005), reprinted in 2005 U.S.C.C.A.N. 88).

**(A) Movants Have Established Cause Under *11 U.S.C. § 1112(b)(4)***

The evidentiary hearing began with the testimony of Movants' expert witness and the conclusions reached in the expert report. According to the report, Debtor's business has consistently incurred in operating losses over the past four years (2004-2007) and most recently (after filing the second bankruptcy petition) the losses continue to be significant, (Exhibit 1, pg. 3). In addition, Movants' expert report concluded that the Debtor has demonstrated over the past eighteen months of operations, under Bankruptcy Court protection, that it is not a financially viable operation, because of:

A. Lack of Profitability- Debtor has operated with consistent losses both prior to and post bankruptcy petition.

B. Financial Weakening- Debtor has deteriorated financially over the last 18 months of bankruptcy.

C. Insolvency- Debtor cannot meet its obligations towards creditors.

D. Failure to Reorganize- Debtor has not implemented corrective reorganization measures to ensure its viability.

E. Unreliable Financial Data- Debtor has inconsistent and unreliable financial data on its operations which has been produced to the Court and the creditors. (Exhibit 1).

Finally, according to Movants' expert report and testimony;

a. Debtor has accumulated a significant stockholders (equity) deficit, which has been steadily growing and is estimated at $17.1 million as of March of fiscal year 2008 (Refer to pro forma financial statements for fiscal year 2007 and 2008).

b. Control over accounts receivable balances has been lost. Collectible balances pre and post petition, as reported in the monthly operating reports, have grown significantly (32%), during the bankruptcy period, from $7.7 million to $10.2 million.

c. Post petition retail accounts receivable have also dramatically increased 470% from $1.6 million in January 2007 (first month of bankruptcy) to $7.8 million at the end of the fiscal year in September 2007. This represents a 384% increase. As of March 2008, six months into the current fiscal year, accounts receivable had further grown to $9.2 million, an additional increase of 18%.

d. Of particular concern, related to the accounts receivable, is that $5.9 million or 64% of the post petition balance at March 2008 (monthly operating report No. 4) is over 60 days and collectibility is questionable. Every dollar of uncollectible receivables further undermines the already questionable financial viability of the operation.

e. Post petition accounts payable to trade (outstanding new current debt) have increased from

$169,826 (January 2007) to $2,051,061 (March 2008).

f. Total accounts payable, pre and post petition, have reached an all time high of $8.3 million, as reported in the March 2008 Interim Financial Statement (Exhibit 1).

A summary of debtor's own Profit/Loss statements for the last 5 years shows that Debtor's business has been incurring in losses since 2003. See Exhibit 1, Pg 16.

During cross-examination, Debtor's attorney confronted Movants' expert witness with contradictions in the expert report. One of the contradictions was that Debtor's number showed net profits while Movants' report stated losses. The expert explained that the numbers were changed due to the comparisons of Debtor's last two audited financial statements and the current financial information. Furthermore, the expert witness explained that Debtor's financial statements have been changed on different occasions since the filing of the petition in 2007, (Dkt. No. 355, Trial Transcript Pg. 132-139). These changes question the validity and veracity of this last minute financial statement which appear to make Debtor's business a profitable corporation.

Movants' expert witness also explained that the statistics and projections presented by the Debtor are not accurate nor do they conform to standard accounting principles. That is why the expert report contains different projections than those of Debtor's own financial data. Because there was no reliable financial data available, Movants' expert witness used the historical performance of the previous years to adjust Debtor's financial projections of profits. Debtor's attorney confronted the expert report with a proffer that a line of credit was "paid off" to Scotia Bank, making the expenses lower. The problem with this assertion is that Debtor failed to file evidence of such event and the only testimony as to that fact is Debtor's comptroller, which was discredited by Movants' cross examination. (Trial Transcript Pg. 180-190, 234-245).

In the expert opinion report, regarding the unprofitable conclusion, Debtor's attorney

confronted the expert witness with the account receivables adjusted by him. Movants' expert witness explained that the older the account receivables, the harder they are to collect. Also, the expert witness is not concluding that Debtor is not paying their creditors, just that the diminution of cash will make it harder for the Debtor to meet his obligation. (Trial Transcript Pg. 119-124, 170-176).

After careful consideration of the evidence on file, the exhibits, the testimony presented at the hearing from the expert witness and the expert report, it is our conclusion that Movants have established "cause" as required by section 1112(b)(1). The reality presented since the filing of this Chapter 11 case in January 2007, has been a business with losses or minimal margins of profits, with questionable accounting procedures.

**(B) Debtor Failed to Specifically Identify "Unusual Circumstances"**

Debtor's expert witness was the comptroller of the business, Ms. Betzaida Cruz, and Debtor's lay witness was the executive director of the hospital, Mr. Julio Andino. Debtor's comptroller attacked the veracity of the Movants' expert report without having prepared a report of her own or submitted any other documentary evidence in support of her testimony. (Trial Transcript Pg. 220-222). Her testimony was discredited in the cross examination by the Movants' attorney where he exposed that the method utilized to create the margins of profit did not conform to generally accepted accounting principles (GAAP). (Trial Transcript Pg. 247-251).

Furthermore, Debtor's comptroller admitted that Debtor's corporation has not paid rent to the owner of the hospital premises since 2006, except for a motion to consign funds in the amount of $205,220.00. The monthly rent for the use of the hospital is $75,000.00 and this amount is not reported nor specified in the monthly operating reports as expenses. (Trial Transcript Pg. 268-274).

Finally, Debtor's witness admitted that they had not paid their monthly electrical bills since 2006 and it is not accounted as accumulated expenses. The monthly amount of electricity is around

$130,000.00, in which there is a dispute as to the amount that Debtor is responsible for. (Trial Transcript Pg. 261-266, 281). Even with Debtor's arguments that they do not owe rent or electricity, they have not established "unusual circumstances" as required by section 1112(b)(1).

The testimony of Debtor's executive director was to proffer the efforts by the corporation to reduce the expenses and to offer new services. He testified that the new services will increase revenues and make the operation of the hospital more profitable. Unfortunately, none of this testimony was supported by admissible documentary evidence. (Trial Transcript Pg. 320-331). The only evidence the Court has of the alleged new services and savings in operating costs comes solely from the testimony of Mr. Julio Andino and Ms. Betzaida Cruz, who cannot be considered to be impartial witnesses. This also fails to establish "unusual circumstances" as required by section 1112(b)(1).

Debtors' own financial data confirms that the expenses and losses of the corporation have increased from 12.4 million in 2003 to 17.1 million in 2007. Debtor has been in and out of Bankruptcy since 2004 with no foreseeable chance of reorganization.

Moreover, Debtor's appeal of the Commonwealth Court's decision to dismiss with prejudice the contract dispute with the Municipality of Mayaguez has been denied twice in the Supreme Court of Puerto Rico. Debtor's executive director of the hospital stated that without the resolution of this controversy, no financial institution is willing to invest in the corporation. (Dkt. No. 355 Pg. 331). It is safe to conclude that debtor's cause of action will not be reconsidered in the Supreme Court of Puerto Rico and even if it is, it will take years to resolve the disputed controversy. Hence, it is highly unlikely that the Debtor can argue that they still have an executory contract to assume, which is their primary source of income. The combination of these factors weighs in as to the prospect of Debtor's future reorganization and the validity of Debtor's assertion of profitability.

**IV.     Conclusion**

Under BAPCPA, the Court must make a decision which fosters the best interests of creditors and the estate. The Court believes that this Chapter 11 filing will not be able to stem the Debtor's losses and place the Debtor's business enterprise back on a solid financial footing within a reasonable amount of time. *Supra* Collier.

**ORDER**

Upon consideration of the Movants' Motion to Dismiss Debtor's Chapter 11 Case (Dkt. No. 244 and 247), pursuant to 11 U.S.C. § 1112(b)(1), after notice and an opportunity for hearing, it is hereby

ORDERED that for the reasons stated in the preceding Opinion the Movants' Motion is GRANTED and the Debtor's Chapter 11 case is dismissed forthwith, with a bar to re-file for one year.

**IT IS SO ORDERED.**

**San Juan, Puerto Rico, this 06 day of June, 2008.**

Brian K. Tester
U.S. Bankruptcy Judge